## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

|  |  |
|---|---|
| Indian Motorcycle International, LLC, and Polaris Industries Inc., | ) ) ) ) |
|  | ) Civil Action No. |
| Plaintiffs | ) ) |
| v. | ) ) **JURY TRIAL REQUESTED** |
| SunFrog, LLC | ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs, Indian Motorcycle International, LLC and Polaris Industries Inc. by way of complaint against Defendant, SunFrog, LLC, state and allege as follows:

### NATURE OF THE ACTION

This is a civil action for damages and injunctive relief arising out of Defendant's trademark infringement, counterfeiting, false designation of origin, false advertising, passing off, and unjust enrichment under federal, state and common law as a result of Defendant's blatant and wrongful acts, including willful infringement of the Plaintiffs' intellectual property rights.

### THE PARTIES

1.     Plaintiff Indian Motorcycle International, LLC ("Indian Motorcycle") is a Delaware Limited Liability Company having its principal place of business at 2100 Highway 55, Medina, Minnesota, 55340.

2.      Plaintiff Polaris Industries Inc. ("Polaris") is a Delaware Corporation having its principal place of business at 2100 Highway 55, Medina, Minnesota, 55340.

3.      Upon information and belief, Defendant SunFrog, LLC DBA SunFrog Shirts ("Defendant") is a Michigan Limited Liability Company with a principal place of business at 1782 O'Rourke Blvd., Gaylord, Michigan 49735.

4.      Upon information and belief, Defendant has a principal place of business in Michigan, is organized under the laws of the State of Michigan, and has conducted business in Michigan, including through use of at least the websites www.sunfrog.com and www.facebook.com/SunFrogShirts.

## JURISDICTION AND VENUE

5.      This is an action for counterfeiting, trademark infringement, unfair competition and dilution under the Lanham Act, 15 U.S.C. §§ 1051 et seq.; common law trademark infringement and unfair competition; and state deceptive trade practices. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1332 and 1338, as well as 15 U.S.C. § 1121, as well as supplemental jurisdiction under 28 U.S.C. § 1367. The amount in controversy, exclusive of costs and interest, exceeds Two Million Dollars ($2,000,000.00).

6.      This Court has personal jurisdiction as Defendant has a principal place of business in Michigan, has transacted business within the State of Michigan, has a business organized under the laws of the State of Michigan, has committed acts of infringement within the State of Michigan, and has injured Plaintiffs here in Michigan.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the claims occurred in this district, and the Defendant transacts business within this judicial district.

## FACTUAL BASIS

8.    Indian Motorcycle and Polaris (collectively, "Plaintiffs") are manufacturers and sellers of recreational vehicles in the United States and abroad.

9.    Since at least as early as 1901, Indian Motorcycle and its predecessors in interest have used the name and trademark INDIAN to identify its business and the brand of its motorcycles and related parts and accessories. In addition, Indian Motorcycle uses the INDIAN trademark in connection with the sale of apparel, including shirts and pants.

10.    Indian Motorcycle is also the owner of more than thirty U.S. trademark registrations composed of the term INDIAN in connection with products and services related to its motorcycle business, including INDIAN branded apparel. Indian Motorcycle is also the owner of other U.S. trademark applications and registrations for its motorcycles and related products, including the marks SCOUT and CHIEF.

11.    Indian Motorcycle's United States trademark registrations include, but are not limited to:

| Trademark & Logo | App. No./ Reg. No. | Goods/Services |
|---|---|---|
|  | 4,501,980 | (Int'l Class: 14) ornamental pins (Int'l Class: 18) wallets; backpacks (Int'l Class: 25) clothing, namely, jackets, shirts, vests, pants, |

| | | |
|---|---|---|
| | | gloves, rain suits, and belts; headwear, namely, hats |
|  | 4,478,922 | (Int'l Class: 18)<br>backpacks; leather key chains; travel bags; duffel bags<br>(Int'l Class: 25)<br>clothing, namely, jackets, shirts, vests, pants, gloves, hats, shoes and boots |
|  | 3,354,681 | (Int'l Class: 25)<br>clothing, namely, pants, shirts, jackets, shorts, sweaters, underwear, hats, belts |
| **INDIAN** | 3,673,330 | (Int'l Class: 25)<br>clothing, namely, boots, t-shirts, sweatshirts, caps, hats, jackets, and sweaters<br>(Int'l Class: 26)<br>ornamental cloth patches |
|  | 652,777 | (Int'l Class: 039)<br>men's and boys' knitted cotton shirts |
|  | 4,198,942 | (Int'l Class: 12)<br>motorcycles and structural parts therefore; motorcycle saddlebags; leather motorcycle bags<br>(Int'l Class: 14)<br>jewelry; ornamental pins; clocks<br>(Int'l Class: 18)<br>wallets; leather key chains; luggage; travel bags<br>(Int'l Class: 25)<br>clothing, namely, jackets, sweaters, shirts, vests, pants, gloves, chaps, sweatshirts, t-shirts, belts; headwear, namely, caps, hats, skull caps, beanies, knit hats, head bands, and bandanas; footwear, namely, shoes and boots; leather clothing, namely, leather jackets, leather pants, leather chaps, leather gloves, leather shirts, and leather belts<br>(Int'l Class: 28) |

| | | |
|---|---|---|
| | | scale model vehicles; model toy motorcycles; miniature motorcycle replicas |
| INDIAN MOTORCYCLE | 4,325,612 | (Int'l Class: 09) motorcycle helmets; motorcycle goggles; decorative magnets; luminous signs (Int'l Class: 12) motorcycles and structural parts therefor; motorcycle saddlebags (Int'l Class: 16) posters, pictures, decals, stickers, stationery, postcards, pens, printed paper signs, calendars, brochures about motorcycles and motorcycle accessories, prints in the nature of photographs and pictures (Int'l Class: 25) clothing, namely, footwear, shirts, jackets, hats, gloves, vests, pants (Int'l Class: 28) model toy vehicles, ride-on toys, toy motorcycles; sports bags specially adapted for motorcycle sports equipment |
|  | 4,956,757 | (Int'l Class: 25) clothing, namely, shirts, jackets, pants, gloves, hats and footwear |
|  | 4,727,991 | (Int'l Class: 12) Motorcycles and structural parts therefor; motorcycle engines; motorcycle saddlebags; leather motorcycle bags, namely, tail bags (Int'l Class: 18) Luggage; travel bags (Int'l Class: 25) Clothing, namely, jackets, sweaters, shirts, pants, shorts, gloves, hats, and footwear |
| SCOUT | App. No. 86/133063 | (Int'l Class: 25) Clothing, namely, shirts, jackets, pants, gloves, hats, cloth bibs, and footwear, all for use in connection with the promotion of |

| | | motorcycle racing and the sale of motorcycles |
|---|---|---|
| **SCOUT** | 4,637,389 | (Int'l Class: 12) Motorcycles for on-road use |
| **CHIEF** | 2,388,763 | (Int'l Class: 12) Motorcycles |

(collectively, "the INDIAN Marks" or "Indian Motorcycle's Marks"). Copies of information relating to Indian Motorcycle's federal registrations and applications for the INDIAN Marks and printed from the United States Patent and Trademark Office ("USPTO") website are attached as **Exhibit A** hereto.

12.     The registrations for the relevant INDIAN Marks were issued in compliance with law. In addition, Registration Nos. 652,777, 2,388,763, 3,354,681, 3,673,330 and 4,198,942 are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and are therefore conclusive evidence of the validity of the registrations, Indian Motorcycle's ownership of the registrations, and of Indian Motorcycle's exclusive right to use the marks for the goods and services listed therein pursuant to Sections 7(b) and 15 of the Lanham Act, 15 U.S.C. §1057 and 1065.

13.     Indian Motorcycle has advertised and promoted its INDIAN Marks extensively, and has made substantial sales of its motorcycles and related products, including apparel, bearing the INDIAN Marks.

14.     The result of these activities is that the INDIAN Marks have achieved widespread consumer recognition, making them strong marks entitled to broad protection

against infringement. In addition, Indian Motorcycle's Marks are famous and became famous prior to Defendant's use of the INDIAN Marks in the United States.

15.     Indian Motorcycle's ownership of the INDIAN Marks and registrations accord Indian Motorcycle exclusive nationwide rights to the use of the INDIAN Marks for its goods and services, and the right to prevent others from making infringing use of the INDIAN Marks or any mark confusingly similar thereto.

16.     In addition to the federal registration rights, Indian Motorcycle has common law rights in the INDIAN Marks through its use of these marks in connection with the sale of motorcycles and/or apparel since long before Defendant adopted or used the mark for its goods.

17.     Since at least as early as 1949, Polaris and its predecessors in interest have used the name and trademark POLARIS to identify its business and the brand of its snowmobiles, all-terrain vehicles, and related parts and accessories. In addition, Polaris uses the POLARIS trademark in connection with the sale of apparel, including shirts and pants.

18.     Polaris is also the owner of more than forty-five U.S. trademark registrations composed of the term POLARIS in connection with products and services related to its recreational vehicle business, including apparel. Polaris is also the owner of other U.S. trademark registrations for its recreational vehicles and apparel, including the Polaris logo (  ) and the mark RZR.

19.     Polaris' United States trademark registrations include, but are not limited to:

| Trademark & Logo | App. No./ Reg. No. | Goods/Services |
|---|---|---|
| **POLARIS** | 4,524,969 | (Int'l Class: 1)<br>Antifreeze<br>(Int'l Class: 4)<br>Lubricants and greases for recreational vehicles<br>(Int'l Class: 7)<br>Winches<br>(Int'l Class: 9)<br>GPS Units<br>(Int'l Class: 12)<br>Aftermarket accessories specially adapted for recreational vehicles, namely, windshields, cargo rack roof bags and boxes for vehicles, cargo basket mounts, spray anchor mounts, expansion anchors with mounts and bed wall extenders, attachable second rider seats, roof panels for land vehicles, premium-outfitted truck cabs, windshields, bumpers, brush guards, tires, wheels<br>(Int'l Class: 13)<br>Gun scabbards<br>(Int'l Class: 25)<br>Clothing, namely, jackets, parkas, belts, pants, shirts, hats, gloves, shorts, vests |
| **POLARIS** | 2,949,734 | (Int'l Class: 25)<br>Parkas, belts, bandannas, scarves, tops, turtlenecks, sweatshirts, sweat pants, t-shirts, shirts; jerseys, caps, hats, jackets, pants, chaps, rain suits; warm-up suits; vests; wet suits; gloves, shorts, tops, race pullover shell, factory race long sideline jacket, factory race check vest, check vest, nylon jacket, fleece jacket liner, nylon jacket, leather jacket, insulated jacket, factory race pants, factory race bibs, factory race leather pants, bibs, ski bibs, convertible ski bib pants, non-insulated pants, factory race rider jersey, pullover; wind shirt, wind pants, polo shirt, denim shirt, knit sweater, |

| | | |
|---|---|---|
| | | leather gloves, leather mittens, gloves, nylon gloves, nylon mitt, factory race driver gloves, fleece thermal and nylon bomber caps, stocking caps, face mask, watch cap, neck gaiter, headband, ball cap, boots, leather boots, snow boots, rugged all-weather boots, hunting boots, insulated socks, wool socks, socks, liners, fleece pants, sweatshirt, sweatpants, balaclavas, snow shoes; riding chaps |
| POLARIS | 2,279,456 | Clothing, namely, hats, shirts, t-shirts, sweat shirts, boots, jackets, gloves, stocking caps |
| POLARIS | 1,360,238 | (Int'l Class: 9)<br>Safety helmets, and one-piece safety goggles for use as winter wear and recreational vehicle safety-wear<br>(Int'l Class: 12)<br>Snowmobiles and structural parts thereof, and fitted protective covers for snowmobiles<br>(Int'l Class: 25)<br>Cold weather clothing-namely, insulated jackets, pants, boots, sweaters, stocking caps, and one-piece snowmobile suits |
| POLARIS | 908,318 | (Int'l Class: 4)<br>Engine oil<br>(Int'l Class: 2)<br>Spray paint<br>(Int'l Class: 22)<br>Fitted protective covers for snowmobiles<br>(Int'l Class: 25)<br>Coveralls |
| | 3,993,061 | (Int'l Class: 12)<br>All-terrain vehicles, all-terrain utility vehicles, snowmobiles, motorcycles, electric on-road and off-road general purpose utility vehicles, and structural parts therefor. |
| RZR | 4,047,705 | (Int'l Class: 12)<br>All-terrain utility vehicles and structural parts therefor. |
| RZR | 4,617,078 | (Int'l Class: 12) |

| | | Fitted covers for vehicles; Pre-designed vinyl vehicle wraps specially adapted for vehicles<br>(Int'l Class: 16)<br>Stickers; decals |
|---|---|---|
| **RZR** | App. No. 87/390242 | (Int'l Class: 25)<br>Clothing, namely, hats, shirts and jackets used to promote off-road side-by-side utility vehicles and the sport of off-road side-by-side riding |
| **RZR** | 4,997,407 | (Int'l Class:16)<br>Decals and stickers<br>(Int'l Class: 21)<br>Cups and mugs |

(collectively, "the POLARIS Marks" or "Polaris' Marks"). Copies of information relating to Polaris' federal registrations for the POLARIS Marks and printed from the United States Patent and Trademark Office ("USPTO") website are attached as **Exhibit B** hereto.

20.    The registrations for the relevant POLARIS Marks were issued in compliance with law. In addition, Registration Nos. 2,949,734, 2,279,456, 1,360,238, 908,318, 4,047,705 and 3,993,061 are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and are therefore conclusive evidence of the validity of the registrations, Polaris' ownership of the registrations, and of Polaris' exclusive right to use the marks for the goods and services listed therein pursuant to Sections 7(b) and 15 of the Lanham Act, 15 U.S.C. §1057 and 1065.

21.    Polaris has advertised and promoted the POLARIS Marks extensively, and has made substantial sales of its recreational vehicles and related products, including apparel, bearing the POLARIS Marks.

22.     The result of these activities is that the POLARIS Marks have achieved widespread consumer recognition, making them strong marks entitled to broad protection against infringement. In addition, Polaris' Marks are famous and became famous prior to Defendant's use of the POLARIS Marks in the United States.

23.     Polaris' ownership of the POLARIS Marks and registrations accord Polaris exclusive nationwide rights to the use of the POLARIS Marks for its goods and services, and the right to prevent others from making infringing use of the POLARIS Marks or any mark confusingly similar thereto.

24.     In addition to the federal registration rights, Polaris has common law rights in the POLARIS Marks through its use of these marks in connection with the sale of recreational vehicles and/or apparel since long before Defendant adopted or used the mark for its goods.

25.  Defendant owns and operates a website located at www.sunfrog.com, through which it offers services for users to create online retail stores and marketplaces to sell goods.

26.  Upon information and belief, users of Defendant's website upload design images for Defendant to print onto apparel such as t-shirts and pants for sale. Defendant provides payment processing, shipping, and customer service in connection with sales of the printed apparel. Defendant's services further include apparel design, merchandising, and advertising for users. A description of Defendant's services is attached hereto as **Exhibit C.**

27.   Upon information and belief, Defendant created an online retail store and marketplace called SunFrog, located at the website www.sunfrog.com, on which it produces, promotes and offers for sale apparel called "Indian Motorcycle," "Indian MC," and "Polaris" and which prominently features Plaintiffs' INDIAN Marks and POLARIS Marks. A copy of several screen shots from web pages appearing on sunfrog.com and facebook.com illustrating Defendant's use of the INDIAN Marks and POLARIS Marks is attached hereto as **Exhibit D**.

28.   Defendant used Plaintiffs' INDIAN Marks and POLARIS Marks to sell clothing in competition with Plaintiffs' products. Defendant used Plaintiffs' INDIAN Marks and POLARIS Marks to identify its own products. However, Plaintiffs have no relationship with Defendant and have never authorized Defendant to use Plaintiffs' Marks.

29.   Upon information and belief, Defendant has sold numerous clothing items bearing the INDIAN Marks and POLARIS Marks (collectively "Plaintiffs' Marks").

30.   Plaintiffs sent Defendant a letter on November 14, 2016, and demanded that Defendant cease and desist all use of Plaintiffs' INDIAN Marks. Plaintiffs' letter to Defendant dated November 14, 2016 is attached hereto as **Exhibit E**. Plaintiffs sent the letter via UPS and also sent an e-mail to Defendant's e-mail address, info@sunfrogshirts.com. Plaintiffs' email to Defendant is attached hereto as **Exhibit F**. Plaintiffs requested a response by November 20, 2016. Defendant responded by electronic mail from the address legal@SunFrogShirts.com on December 4, 2016 stating that "the claim…has been acted upon" and that "the design has been deactivated and should no

longer be found on the SunFrog platform." Defendant's electronic mail response to Plaintiffs dated December 4, 2016 is attached as **Exhibit G**.

31.    After Plaintiffs made further requests to remove infringing apparel from Defendant's website, Plaintiffs discovered that several types of apparel with infringing designs were still accessible on Defendant's website, and Plaintiffs again requested by electronic mail on January 31, 2017 that the infringing apparel be removed from Defendant's website. Plaintiffs' electronic mail request to Defendant dated January 31, 2017 is attached as **Exhibit H**.

32.    Several weeks later Plaintiffs were still seeing additional instances of unauthorized use of Plaintiffs' Marks on Defendant's website; Plaintiffs sent Defendant a letter on February 22, 2017, and again demanded that Defendant cease and desist all use of Plaintiffs' Marks. Plaintiffs' letter to Defendant dated February 22, 2017 is attached hereto as **Exhibit I**.

33.    After observing several subsequent instances of unauthorized use of Plaintiffs' Marks on Defendant's website, Plaintiffs sent Defendant another letter on August 16, 2017, and again demanded that Defendant cease and desist all use of Plaintiffs' Marks. Plaintiffs' letter to Defendant dated August 16, 2017 is attached hereto as **Exhibit J**. On August 31, 2017, Defendant responded to Plaintiffs' letter from August 16, 2017, stating that Defendant had made several upgrades to its DMCA process for monitoring infringing subject matter on its website. Defendant's letter to Plaintiffs dated August 31, 2017 is attached hereto as **Exhibit K**.

34.     Following Defendant's letter to Plaintiffs dated August 31, 2017, Plaintiffs continued to see infringing use of Plaintiffs' INDIAN Marks and again corresponded with Defendant by electronic mail regarding this continued infringement. Plaintiffs again demanded that the infringing subject matter be removed from Defendant's website. Plaintiffs' electronic mail correspondence to Defendant dated September 13, 2017 is attached hereto as **Exhibit L**.

35.     At the time of this writing, infringing apparel can still be found on Defendant's website which bears Plaintiffs' INDIAN Marks and POLARIS Marks. See, for example, **Exhibit D** dated November 29, 2017 and **Exhibit M**, dated November 30, 2017, and attached hereto. Defendant's enforcement methods for preventing infringing use of Plaintiffs' INDIAN Marks and POLARIS Marks have therefore been shown to be ineffectual.

36.     Upon information and belief, Defendant also promotes and offers for sale t-shirts featuring Plaintiffs' Marks on social media platforms for motorcycle enthusiasts, including Facebook.com's community sites entitled "I Love Indian Motorcycle" and "Motorcycles Club." Indian Motorcycle has submitted takedown requests of Defendant's products on Facebook.com on at least two occasions. Examples of Facebook posts advertising offers for sale of infringing apparel linking directly to Defendant's website are attached hereto as **Exhibit N**.

37.     Upon information and belief, Defendant was aware of Plaintiffs' prior rights in the INDIAN Marks and POLARIS Marks but continues to promote and offer for sale products featuring Plaintiffs' INDIAN Marks and POLARIS Marks.

38.    Upon information and belief, Defendant promotes and uses the INDIAN Marks and POLARIS Marks in Michigan and nationwide, despite Plaintiffs' repeated requests to cease and desist from doing do.

39.    Defendant's use of the identical INDIAN Marks and POLARIS Marks in connection with identical products targeted at the identical consumers through the same trade channels as Indian Motorcycle and Polaris constitutes counterfeiting, trademark infringement and unfair business practices as such use is likely to confuse the relevant consuming public into believing the products of Defendant are affiliated with or sponsored by Indian Motorcycle and Polaris.

40.    Defendant's continued use of the INDIAN Marks and POLARIS Marks to trade off the resounding consumer goodwill of the Plaintiffs in the INDIAN Marks and POLARIS Marks for products and services related to Plaintiffs' recreational vehicle businesses demonstrates an intentional pattern of behavior designed to mislead the public and unfairly interfere with Plaintiffs' industrial trade.

41.    Upon information and belief, it is Defendant's business practice to trade off the consumer goodwill of trademark owners in its federally registered trademarks. Upon information and belief, Defendant created an online retail store and marketplace called SunFrog, located at the website www.sunfrog.com, on which it produces, promotes and offers for sale products that bear federally registered trademarks owned by Plaintiffs.

42.    The confusion caused by Defendant's use of the INDIAN Marks and POLARIS Marks has harmed Plaintiffs and will continue to do so unless and until Defendant's use is enjoined.

43.     Defendant is aware of the Plaintiffs' prior rights referenced above and has been since at least November 14, 2016.

44.     In addition, Plaintiffs' registrations have provided constructive notice of the Plaintiffs' rights, including through the Plaintiffs' use of the ® symbol in connection with its marks.

45.     Defendant has used marks confusingly similar to the Plaintiffs' federally-registered Marks in connection with the promotion and/or sale of goods identical to the goods of the Plaintiffs without the consent of the Plaintiffs, and despite the notice and complaints of Plaintiffs, in a manner which is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those goods.

46.     Defendant has used marks confusingly similar to the Plaintiffs' federally-registered Marks and common law rights in connection with the promotion and/or sale of goods identical to the goods of the Plaintiffs without the consent of the Plaintiffs in a manner which is causing actual confusion, mistake, and is deceiving as to source or origin.

## COUNT I

### FEDERAL COUNTERFEITING

47.     Plaintiffs repeat and reallege the paragraphs above.

48.     This cause of action arises under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127 and 15 U.S.C. §§ 1114, 1117.

49.     Defendant has used spurious marks which are a counterfeit of, identical with, or substantially indistinguishable from, Plaintiffs' federally registered Marks.

50.    Defendant has used the marks knowing that they are counterfeit in connection with the promotion and/or sale of goods identical to Plaintiffs' goods without Plaintiffs' consent or authorization, in a manner which is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those goods.

51.    Defendant's unauthorized use of Plaintiffs' Marks is likely to mislead and cause customers and/or the general public to believe that the Defendant's goods are produced by or under the authority of Plaintiff.

52.    Defendant's actions constitute counterfeiting under 15 U.S.C. § 1114.

53.    Plaintiffs' goodwill in its name and its Asserted Marks will be irreparably harmed if Defendant continues its actions.

54.    Upon information and belief, Defendant intentionally used Plaintiffs' Marks, knowing such marks are counterfeit marks, in connection with the promotion and/or offers for sale of goods identical to the goods of Plaintiffs. Pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b), Plaintiffs are entitled to recover treble profits or damages, whichever amount is greater, together with a reasonable attorney's fees.

55.    Pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), Plaintiffs are entitled to recover, in lieu of actual damages and profits under § 1117(a), statutory damages for Defendant's use of counterfeit versions of Plaintiffs' Marks in connection with the promotion and/or offers for sale of goods identical to Plaintiffs' goods. Plaintiffs reserve their right to elect an award of statutory damages of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the

counterfeit marks was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

56.    Plaintiffs have been damaged by Defendant's actions in an amount which is as yet undetermined. If the Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## COUNT II

## FEDERAL TRADEMARK INFRINGEMENT

57.    Plaintiffs repeat and reallege the paragraphs above.

58.    This cause of action arises under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127 and 15 U.S.C. §§ 1114, 1117.

59.    Defendant has used Plaintiffs' federally registered INDIAN Marks and POLARIS Marks in connection with the promotion and/or sale of goods identical to Plaintiffs' goods without Plaintiffs' consent or authorization in a manner which is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those goods. These activities have led to and are likely to lead to confusion in the marketplace. Defendant's use of the INDIAN Marks and POLARIS Marks is likely to mislead and cause customers and/or the general public to believe that the Defendant's goods are produced by or under Plaintiffs' authority. Defendant's use of the INDIAN Marks and POLARIS Marks infringes Plaintiffs' rights in its federally registered Marks.

60.    Plaintiffs' goodwill in its name and its Asserted Marks will be irreparably harmed if Defendant continue its actions.

18

61.    Defendant's actions constitute trademark infringement under 15 U.S.C. § 1114.

62.    Upon information and belief, Defendant's actions were taken in willful, deliberate and intentional disregard to Plaintiffs' rights. This case is exceptional under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

63.    Plaintiffs have been damaged by Defendant's actions in an amount which is as yet undetermined. If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## COUNT III

## FEDERAL UNFAIR COMPETITION

64.    Plaintiffs repeat and reallege the paragraphs above.

65.    The cause of action set forth herein arises under the Lanham Act of the United States, 15 U.S.C. §§ 1051 - 1127 and 15 U.S.C. § 1125(a).

66.    Defendant's use of the INDIAN Marks in connection with the promotion and/or sale of goods identical to the goods of Indian Motorcycle without the consent of Indian Motorcycle is likely to cause confusion, to cause mistake, or to deceive as to the source or origin of Defendant's goods among purchasers and/or users of those goods. Defendant's use of the INDIAN Marks infringes Plaintiffs' rights in its federally registered mark and common law trademarks.

67.    Defendant's use of the POLARIS Marks in connection with the promotion and/or sale of goods identical to the goods of Polaris without the consent of Polaris is likely to cause confusion, to cause mistake, or to deceive as to the source or origin of Defendant's

goods among purchasers and/or users of those goods. Defendant's use of the POLARIS Marks infringes Plaintiffs' rights in its federally registered mark and common law trademarks.

68.     Defendant's acts constitute a willful false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125(a).

69.     Plaintiffs have been damaged by Defendant's actions in an amount which is as yet undetermined. If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## COUNT IV
## FEDERAL TRADEMARK DILUTION

70.     Plaintiffs repeat and reallege the paragraphs above.

71.     This cause of action arises under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127 and 15 U.S.C. § 1125(c). Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1338, as well as 15 U.S.C. § 1121.

72.     Plaintiffs' Marks are famous and became famous prior to Defendant's first use of the INDIAN Marks and the POLARIS Marks in the United States.

73.     Defendant has used, in commerce, after Plaintiffs' Marks became famous, marks which cause dilution of the distinctive quality of Plaintiffs' famous Marks.

74.     Plaintiffs' goodwill in their name and Asserted Marks will be diluted and irreparably harmed if Defendant continues its actions.

75.     Defendant's actions constitute trademark dilution under 15 U.S.C. § 1125(c).

76.     Upon information and belief, Defendant's continued actions have been willfully intended to trade on Plaintiffs' reputation or to cause dilution of Plaintiffs' famous Marks.

77.     Plaintiffs have been damaged by Defendant's actions in an amount which is as yet undetermined. If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## COUNT V

### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

78.     Plaintiffs repeat and reallege the paragraphs above.

79.     This cause of action arises under Michigan's law of trademark infringement and unfair competition.

80.     Defendant's activities complained of constitute infringement of Plaintiffs' common law rights in the state of Michigan, and unfair competition.

81.     Plaintiffs have been damaged by Defendant's acts in an amount which is as yet undetermined.

82.     If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## COUNT VI

### VIOLATION OF M.C.L.A. § 445.901 ET SEQ. MICHIGAN CONSUMER PROTECT ACT

83.     Plaintiffs repeat and reallege the paragraphs above.

84.     This cause of action arises under the Michigan Consumer Protection Act, M.C.L. § 445.903. Jurisdiction is founded on 28 U.S.C. § 1338 or, alternatively, upon principles of supplemental, pendent, and/or ancillary jurisdiction.

85.     Defendant's unfair, unconscionable, and deceptive trade practices complained of constitute violations of the Michigan Consumer Protection Act, M.C.L. § 445.903 et seq.

86.     Plaintiffs have been damaged by Defendant's acts in an amount which is as yet undetermined.

87.     If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

88.     Plaintiffs are entitled to recover damages in an amount to be proven at trial as well as its costs and attorneys' fees pursuant to M.C.L.A. § 445.911.

**COUNT VII**

**UNJUST ENRICHMENT**

89.     Plaintiffs repeat and reallege the paragraphs above.

90.     Defendant is being unjustly enriched at the expense of Plaintiffs' damage and irreparable harm.

91.     Plaintiffs have been damaged by Defendant's acts in an amount which is as yet undetermined.

92.     If Defendant's acts are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law.

## JURY DEMAND

93.    Plaintiffs request that a jury be used to decide this case.

**WHEREFORE**, Plaintiffs pray that the Court enter an Order:

A.    Preliminarily and permanently enjoining and restraining the Defendant and Defendant's directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under Defendant:

1.    from using in any way the Asserted Marks, the name INDIAN, the name POLARIS, any other marks or names that contain the wording "INDIAN" or "POLARIS" or any other marks, words or names confusingly similar to Plaintiffs' Marks as the names or marks for any of Defendant's goods or services;

2.    from committing any acts of unfair competition and from creating a false designation of origin or a false description or representation with respect to Plaintiffs' Marks;

3.    from committing any acts of unfair competition by passing off or inducing or enabling others to sell or pass off services which are not Plaintiffs' goods as those of Plaintiffs;

4.    from using in any manner of apparel, packaging, labels, signs, literature, display cards, or other packaging, advertising, or promotional materials, or other materials related to the Defendant's goods or services bearing the INDIAN Marks, the POLARIS Marks, the words INDIAN or POLARIS in the mark or name, and any other mark, word, or name confusingly similar to Plaintiffs' Marks;

5.      from making any statements on promotional materials or advertising for the Defendant's goods or services which are false or misleading as to being an authorized distributor of the Plaintiffs or any of Plaintiffs' subsidiaries;

6.      from making any statements on promotional materials or advertising for the Defendant's goods or services which are false or misleading as to source or origin; and;

7.      from committing any acts of deceptive or unlawful trade practices calculated to cause members of the trade or purchasing public to believe that Defendant's goods or services are the Plaintiffs' goods or services or sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Plaintiffs under the supervision or control of Plaintiffs.

B.      requiring that the Defendant deliver up to Plaintiffs any and all apparel, containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used in the preparation thereof, which in any way use or make reference to the INDIAN Marks or POLARIS Marks, or the name INDIAN or POLARIS in connection with Defendant's goods or services.

C.      requiring that Defendant, within thirty (30) days after service of notice in entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon the Plaintiffs' counsel a written report under oath setting forth details of the manner in which Defendant has complied with the Court's order pursuant to paragraphs A - B above.

D.    requiring Defendant to account and pay over to Plaintiffs all damages sustained by Plaintiffs, all of Defendant's profits from its infringing activity and for which it was unjustly enriched, statutory damages, attorneys' fees, and costs, and ordering that the amount of damages awarded to Plaintiffs be increased three times the amount thereof.

E.    Awarding Plaintiffs such other relief as the Court may deem just and proper.

INDIAN MOTORCYCLE
INTERNATIONAL, LLC

By its attorneys,

Date: December 22, 2017

John C. Blattner (Reg. No. P52745)
**Dickinson Wright PLLC**
350 S. Main St., Suite 300
Ann Arbor, MI 48104
Telephone: (734) 623-1698
Email: JBlattner@dickinson-wright.com


Thomas R. Johnston (Reg. No. 242032)
**MERCHANT & GOULD P.C.**
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2215
Telephone:  (612) 332-5300
Email: tjohnson@merchantgould.com